JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
REYNALDO ALVAREZ, INDIVIDUALLY AND AS NEXT FRIEND OF L.A

**DEFENDANTS**
CITY OF McALLEN

(b) County of Residence of First Listed Plaintiff   HIDALGO COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   HIDALGO COUNTY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
LAW OFFICE OF HECTOR J. TORRES, P.C.
200 N. 12TH AVENUE, SUITE 201
EDINBURG, TEXAS  78541       PHONE: (956) 386-0416

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| | | | | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
This is a Section 1983 lawsuit pursuant to Tile 42 of the U.S. Code.
Brief description of cause:
Violations of the Fourth and Fourteenth Amendments

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*   JUDGE Hon. Jaime Tijerina     DOCKET NUMBER C-5454-13-A

DATE 2-17-14    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| REYNALDO ALVAREZ, INDIVIDUALLY AND AS NEXT FRIEND OF L.A., A MINOR, Plaintiffs, | § § § § § § § | |
| VS. | § § § § § | CIVIL ACTION NUMBER_____ JURY DEMAND |
| CITY OF MCALLEN, Defendant | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME REYNALDO ALVAREZ, INDIVIDUALLY AND AS NEXT FRIEND OF L.A., A MINOR, Plaintiffs in the above entitled and numbered cause and file this Plaintiffs' Original Complaint against Defendant, City of McAllen, and respectfully show as follows:

### I.
### PARTIES

1. At all times relevant hereto, Plaintiff Reynaldo Alvarez was a citizen of Hidalgo County, Texas and the father of Plaintiff L.A., a minor.

2. At all times relevant hereto, Defendant City of McAllen was a city incorporated under Article XI, Section 5 of the Constitution of the State of Texas and under Chapter 13 of Title 28 of the revised Civil Statutes of the State of Texas.

## II.
## SERVICE OF PROCESS

3. Plaintiffs will effectuate service of process on Defendant by sending a copy of this summons and complaint via certified mail, return receipt requested, to the following person, as follows:

> Mayor Jim Darling
> City of McAllen
> 1300 Houston Avenue
> McAllen, Texas 78501

## III.
## JURISDICTION

4. This is a Section 1983 lawsuit pursuant to Title 42 of the U.S. Code. The jurisdiction of this Court is based on 28 U.S.C.A. Section 1343(3) and 28 U.S.C.A. Section 1341.

## IV.
## VENUE

5. As more fully set forth herein, Plaintiff contends that all relevant acts complained of occurred in the City of McAllen, Hidalgo County, Texas.

## V.
## STATEMENT OF FACTS

6. On or about June 28, 2013, Plaintiff Reynaldo Alvarez traveled to Laredo, Webb County, Texas in order to visit with his daughter, L.A., and also to take her on vacation.

On or about June 29, 2013, he picked up his daughter with the full consent and approval of her mother, Maria Consuelo Santos.

7. On or about June 29, 2013, at approximately 10:00 a.m., Alvarez and his daughter traveled from Laredo, Texas to McAllen, Texas. Alvarez made plans to spend approximately one week with his daughter, including a beach vacation for the 4th of July.

8. After a short day trip to the beach at South Padre Island on June 30, 2013, Alvarez and his daughter returned to McAllen, Texas and there they planned to take another trip to the Corpus Christi area. The plan was to leave on July 2, 2013 for Corpus Christi, and then return L.A. to her mother by Friday, July 5, 2013.

9. On or about July 2, 2013, prior to departing to Corpus Christi, Texas, Alvarez left the child with his housekeeper so that he could briefly go to his office and take care of some business.

10. On the same day, at approximately 11:00 a.m., Maria Consuelo Santos showed up unannounced at Alvarez' office in McAllen, Texas, accompanied by her mother, Magdalena Venegas and her sister-in-law, Marissa Gaytan. They had travelled to McAllen from Laredo.

11. Santos and Venegas confronted Alvarez at his office and asked about the whereabouts of L.A. Alvarez calmly informed them that she was being watched for a short time by his housekeeper. Santos and Venegas were obviously agitated and

3

became confrontational with Alvarez. They left and went to Alvarez' residence without informing Alvarez where they were going.

12. At Alvarez' residence, Santos and Venegas created a chaotic situation, whereby they were banging on the door, screaming, and demanding entrance. Gaytan stayed in the vehicle as the driver. The housekeeper, who was protecting the child, had no idea who was there or what was transpiring and actually hid the kids in the closet because of her level of fear.

13. After a short time, Alvarez arrived at his residence and witnessed the scene that was unfolding. He made his way into the house, and Venegas forced herself into the house and began to assault him. She struck him repeatedly on the head with her cell phone. She scratched him multiple times. At the same time that Venegas was assaulting Alvarez, Santos was engaging in a tug of war with the child and also assaulted Alvarez. Venegas screamed and used foul language, calling Alvarez and his housekeeper profane names while she continued to assault Alvarez.

14. At that time, Alvarez' housekeeper called 9-1-1. Although Santos exited the residence, Venegas continued to stay in the residence. Soon after, McAllen Police Department arrived.

15. It was apparent Alvarez had been assaulted and the child was traumatized. The officers, Perez and Gonzalez, spoke with the parties. Alvarez told the officers he wanted to press assault charges on Santos and Venegas. The officers refused to arrest Santos or Venegas. In fact, Officer Perez told Alvarez that if he were to arrest

4

the ladies that assaulted him, he would also have to arrest Mr. Alvarez. He added that he was not going to give Mr. Alvarez the benefit of only arresting the ladies.

16. Alvarez plead with the officers to call Child Protective Services. The officers refused.

17. Alvarez plead with the officers to call their supervisor from the McAllen Police Department. The officers refused.

18. Alvarez plead with the officers not to allow the child to be taken from her home under those conditions.

19. While Alvarez was being interviewed, Venegas took the child outside with her. Alvarez objected, but Venegas continued to walk away with the child and the officers did not stop her.

20. Officer Perez returned to speak with Mr. Alvarez after he had a lengthy conversation with Santos. Officer Perez informed Alvarez that that he had "cut a deal" with the child's mother. He said that the child could go with her mother because her mother promised to return the child at 8:00 p.m. on the same evening. Officer Perez added that it is always best for a child to be with her mother. Perez also said that the mother had more of an interest in the child than Alvarez did.

21. Alvarez informed the officers he did not agree with those terms. Mr. Alvarez informed Officer Perez that the child was being taken without her necessities, and that the child was being taken in a car that had no child safety seat. Officer Perez' attitude was that of a complete lack of care or concern.

5

22. Santos, although promising to return the child, never returned the child. Gaytan drove away with Santos, Venegas, and the child. The child was removed from her father's care without her clothes, her belongings, or her medications. The child disappeared and has not been reunited with her father since. Alvarez had no communication with his daughter for months after the incident occurred. Recently, Santos has allowed him only brief, limited telephone communications with his daughter.

## VI.

### CAUSES OF ACTION: VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS

Plaintiff Alvarez takes issue with and complains of the conduct of the officers on the date in question. Specifically, Alvarez complains about that conduct whereby the officers did or failed to do the following:

   a) Neither officer arrested Santos or Venegas for any offense, including assault, burglary, trespass, etc.;

   b) Neither officer arrested Galvan for participating in those offenses and for driving away with the child, and for not having a child-safety seat;

   c) Neither officer called for a supervisor to go to the scene and assist with the child custody situation;

   d) Neither officer called Child Protective Services so that an investigation into the child's safety could take place;

   e) Officer Perez, on his own initiative, decided who the child should go with, without any court order or other authority;

   f) Neither officer conducted any investigation to determine whether the mother was a fit and competent person prior to giving her the child;

    g) The officers allowed the child to be taken by three individuals, two of whom had just committed an assault, a burglary, and trespass moments before the police arrived;

    h) The officers' report concerning the situation completely failed to mention that there had been criminal offenses committed by Santos, Venegas, and Gaytan;

    i) The report failed to mention that Mr. Alvarez was the victim of an assault;

    j) The report failed to mention that the child and other family members and witnesses who were present during the incident were traumatized by what had occurred; and

    k) To date, the women have not been arrested, although there are outstanding warrants for their arrests.

23. The two McAllen Police Officers who were involved in the incident were at all times acting under color of state law and, as a result of their conduct, Reynaldo Alvarez and his daughter were deprived of certain rights, privileges, or immunities secured by the Constitution of the United States. Had the officers been reasonably well trained police officers, they would have known that the conduct referenced above would violate Plaintiffs' constitutional rights. For example, the officers should have known that the Fourth Amendment provides citizens of the United States with the right to be secure in their persons and houses, and that no persons or things are to be seized except upon warrants supported by probable cause and supported by oath or affirmation. Further, the Fourteenth Amendment guarantees that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor

shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws.

24. The conduct of the McAllen Police Department, as described above, violated the constitutional rights of Reynaldo Alvarez and L.A. It is well established that the Constitution protects the sanctity of the family from regulations and enforcement that adversely impacts the ability to enter into family relationships, to maintain them, and to resolve conflicts within the family relationships. There is a recognized constitutional right to live together as a family, and said right is not limited to the nuclear family, but to extended family relationships as well. The conduct of the McAllen Police Department interfered with and obstructed the relationship that Rey Alvarez had with his daughter. Said conduct interfered with his legal rights to have custody of L.A. Said conduct actually enabled and benefitted the tortfeasors. There was no legitimate state interest compelling the officers to remove the child from her father's home.

25. At all times relevant hereto, Defendant, City of McAllen exercised supervision and control over the two police officers in this case. Said police officers were acting under color of law as law enforcement officers and employees of the City of McAllen.

26. At all times relevant hereto, all of the authorized final policy makers were supervisors, agents, and/or employees of Defendant, City of McAllen. In such capacities, they adopted or ratified official customs, policies, procedures, and decisions, including training programs, which they knew, or should have known were inadequate. The inadequacy of such official customs, policies, procedures, and

8

decisions, including training programs, directly and proximately caused the two officers to use unreasonable, unconstitutional, and illegal conduct, which deprived the Plaintiffs of their Fourth and Fourteenth amendment rights. The inadequacy of such customs, policies, procedures, and decisions, including training programs, manifested a deliberate indifference to the protection of Plaintiffs' constitutional rights and was the moving force which resulted in the deprivation of Plaintiffs' constitutional rights. As a direct and proximate result of the acts or omissions of the Defendant, Plaintiffs suffered injuries and damages for which Plaintiffs now complain.

27. A parent has a fundamental right with regard to the care, custody, and control of his or her children that is protected by the due process clause of the Fourteenth Amendment. The parent-child relationship lies at the heart of constitutionally protected familial relationships.

28. A parent may assert his or her children's Fourth Amendment Rights on behalf of the children if the children are included as Plaintiffs. Law enforcement's seizure of children may also implicate the parent's Fourteenth Amendment liberty interest in the custody of their children.

29. A parent's fundamental right to make decisions concerning the care, custody, and control of their children has been held protected by the due process clause of the Fourteenth Amendment. The state may not deprive a parent of a child without notice and a hearing, unless emergency circumstances pose an immediate threat to the safety of the child.

30. The Fifth Circuit has recognized the most essential basic aspect of familial privacy, the right of the family to remain together without the coercive interference of the awesome power of the State.

31. In assessing the reasonableness of a search or seizure, the Court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.

32. Plaintiff was deprived of his right to custody of L.A. without due process of law. The police officers in this case violated Plaintiff's Fourteenth Amendment right to family integrity by removing L.A. from her home. Plaintiff had legal custody of L.A. under Texas Law as a result of the voluntary transfer of custody from her mother to the Plaintiff. Further, there was no Court order in place establishing custodial rights to L.A. Further, there was no emergency situation existing at the time and place which required the State or law enforcement to remove L.A. from her father's home.

33. L.A. had a liberty interest in remaining in her father's care. There is constitutional protection for the relationship between her and her father. A child's right to family integrity is concomitant to that of a parent. L.A. was undeniably entitled to stay with her father without governmental interference. Under the circumstances that existed at the time, Plaintiff and his daughter L.A. enjoyed a clearly established right to maintain their relationship free from interference by State actors.

Violation of the Equal Protection Clause of the Fourteenth Amendment

34. An equal protection violation occurs when different legal standards are applied arbitrarily to similarly situated individuals. In this case, Plaintiff's right to equal protection was violated when the officers failed to provide him the same police protection as is provided to female victims of domestic and non-domestic violence. Plaintiff had just been assaulted by two women who forced their way into his home. They removed a child from the residence without lawful authority. A third woman acted as their getaway driver. Nevertheless, even with witnesses present, those women were not arrested. The officers acted with a discriminatory purpose. The discriminatory purpose was a motivating factor in not arresting the female culprits. There was discriminatory intent to deprive the Plaintiff of equal protection. One can only imagine what would have happened to Mr. Alvarez if it was he who drove to his mother-in-laws home in Laredo, Texas, forced his way into her house, assaulted his mother-in-law with his hands and a blunt object, and drove away with his daughter.

Municipal Liability Based on Failure to Train or Supervise

35. The Defendant's failure to train or supervise its employees resulted in the Constitutional violations alleged above. This Defendant's failure to train or supervise amounted to deliberate indifference to the rights of persons with whom these police officers came into contact with on a daily basis. The deficiency in training or supervision is what actually caused the police officers' violations of Plaintiffs' rights. The injuries in this case could have been avoided had the officers been trained or

11

supervised pursuant to a program that was not deficient. The Defendant's failure to train or supervise its officers reflects the Defendant's deliberate indifference to the Constitutional rights of the citizenry of the City of McAllen. The policy makers for the City of McAllen knew to a moral certainty that its police officers would confront situations involving child custody disputes; these types of situations present police officers with a difficult choice, and proper training or supervision would make the difficult choice less difficult; the wrong choice by police officers would likely cause the deprivation of a citizen's Constitutional rights.

36. The Defendant's custom and policy resulted in the lack of training or supervision of its police officers. The municipality demonstrated a complete failure to train, or, in the alternative, training and supervision that was so recklessly or grossly negligent that future misconduct by police officers was almost inevitable. The complained of act or acts were those of the final policy makers for the City and said act or acts violated the Plaintiffs' federally protected rights.

37. The Plaintiffs' Fourth Amendment rights were violated when the officers engaged in a warrantless seizure of L.A.

38. In this case, the Defendant had neither a warrant nor probable cause to seize L.A. There was no governmental interest demonstrated sufficient to justify dispensing with Constitutional protections. There was no evidence of danger to L.A. sufficient to implicate the State's interest in protecting the health, safety, and welfare of minors. The officers' actions were not reasonably within the bounds of the law, nor was it

12

objectively reasonable for the officers to believe that L.A. was in danger of eminent harm. The police were not informed of any abuse prior to arriving at Plaintiff's home, and there was no evidence of abuse once they arrived there. At the very least, the officers should have refrained from acting until they received guidance from their legal department or a Court of proper jurisdiction.

## VII.

## DAMAGES

39. As a result of the conduct of the McAllen Police Department, Mr. Alvarez and/or his daughter incurred both economic and non-economic damages in the form of severe mental anguish and emotional distress, in the past and future, loss of companionship and society, and out of pocket expenses.

40. Plaintiffs also seek to recover punitive damages because the Defendant's conduct was reckless or callously indifferent to the federally protected rights of the Plaintiffs and, in the alternative, because the Defendant was motivated by an evil, discriminatory intent.

41. Plaintiffs seek to recover reasonable attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C Section 1988 [b]).

## VIII.

## PRAYER

42. WHEREFORE PREMISES CONSIDERED, Plaintiffs REYNALDO ALVAREZ, INDIVIDUALLY AND AS NEXT FRIEND OF L.A. respectfully pray that the Defendant

be cited to appear and answer herein, and that upon a final hearing of this cause, judgment be entered for the Plaintiffs against Defendant for their economic and non-economic damages referred to above in an amount within the jurisdictional limits of the Court, together with pre-judgment and post-judgment interest at the maximum legal rate, exemplary damages, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

By: /s/ Hector J. Torres
State Bar No. 20143250
Federal No. 17898
LAW OFFICE OF
HECTOR J. TORRES, P.C.
200 N. 12th Avenue, Suite 201
Edinburg, TX 78541
(956) 386-0416 Phone
(956) 386-0446 Fax

**ATTORNEY IN CHARGE FOR PLAINTIFFS REYNALDO ALVAREZ, INDIVIDUALLY AND AS NEXT FRIEND OF L.A., A MINOR**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 8(b).